UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| HEATHER GUSMAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:19-CV-1763-B |
| | § | |
| KROGER TEXAS, L.P., | § | |
| | § | |
| Defendant. | § | |

<u>MEMORANDUM OPINION AND ORDER</u>

Before the Court are Plaintiff Heather Gusman's Motion for Partial Summary Judgment (Doc. 33) and Defendant Kroger Texas, L.P. ("Kroger")'s Motion for Summary Judgment (Doc. 37). For the reasons that follow, both motions are **DENIED**. Further, Gusman's objections as set forth in her response (Doc. 43) to Kroger's motion are **MOOT**.

## I.

## BACKGROUND[1]

This case concerns an injury sustained by Gusman while working at a Kroger grocery store in Burleson, Texas ("the Store"). On January 8, 2019, Gusman was working at the Store as a floor supervisor. Doc. 34, Pl.'s Br., 6–7; Doc. 38, Def.'s Br., 3–4. Another Kroger employee, Solomon Van Buren was working at the Store as a courtesy clerk.[2] Doc. 34, Pl.'s Br., 6–7; Doc. 38, Def.'s Br., 3–4.

That day, Gusman alleges, "the [S]tore was busy and understaffed[.]" Doc. 34, Pl.'s Br., 7.

---

[1] The Court draws the facts from the parties' pleadings and the summary-judgment record.

[2] The duties of a courtesy clerk "include[] bagging customers' groceries, helping customers out with their groceries, and retrieving shopping carts from the parking lot." Doc. 38, Def.'s Br., 4.

At some point, "the [S]tore ran out of grocery carts on one side," and Gusman went out to the parking lot to assist Van Buren in retrieving carts.[3] *Id.* at 6–7; Doc. 38, Def.'s Br., 9. Gusman claims that she "was never trained on how to gather carts." Doc. 34, Pl.'s Br., 7. Kroger, on the other hand, asserts that Gusman had "received training on parking lot safety . . . which includes . . . shopping cart retrieval[.]" Doc. 38, Def.'s Br., 5. Pursuant to Kroger's safety policy, "[c]art retrieval straps shall be used when retrieving more than two carts." Doc. 36, Pl.'s App., 48. Additionally, per the 2015 safety policy—on which Kroger asserts that Gusman received training—"no more than eight carts could be moved at any one time – that many only if using a cart strap." Doc. 38, Def.'s Br., 7. That number was reduced to six carts pursuant to updated safety policies effectuated in 2016. *Id.*

Despite Kroger's safety policies, Van Buren was attempting "to move approximately 50 carts at once to where they were needed." Doc. 34, Pl.'s Br., 7; *see also* Doc. 38, Def.'s Br., 7. Moreover, Van Buren "was not using any cart straps because all of them were either lost or broken." Doc. 34, Pl.'s Br., 7.[4] Gusman did not stop Van Buren, but instead helped him by guiding the carts into the cart corral while Van Buren pushed the carts from the back. Doc. 34, Pl.'s Br., 8–9; Doc. 38, Def.'s Br., 9–10. While doing so, Gusman's arm became "wedged between two carts and, when Van Buren continued pushing the carts, [Gusman] injured her arm." Doc. 38, Def.'s Br., 10; *see also* Doc. 34, Pl.'s Br., 9. Gusman claims that her "arm immediately started burning and swelling" and that she

---

[3] Gusman claims that she was directed to do so by a superior, Doc. 34, Pl.'s Br., 7, while Kroger claims that Gusman did so on her own directive and that Gusman directed Van Buren to retrieve the carts. Doc. 38, Def.'s Br., 9.

[4] Kroger points out that Van Buren could not have used a cart strap for this amount of carts, even if they were available, because "a cart strap can only accommodate 7 or 8 shopping carts." Doc. 38, Def.'s Br., 8.

"remains in excruciating pain and has extremely limited use of that arm." Doc. 34, Pl.'s Br., 9.

On June 19, 2019, Gusman filed suit in Texas state court, asserting negligence claims for direct and vicarious liability against Kroger. *See generally* Doc. 1-2, Notice of Removal Exs., 9–19 (petition). Kroger removed the case to this Court on July 24, 2019, invoking the Court's diversity jurisdiction. Doc. 1, Notice of Removal, 1. On June 15, 2021, Gusman filed a motion for partial summary judgment (Doc. 33). On June 18, 2021, Kroger filed a motion for summary judgment (Doc. 37). Both motions have been fully briefed and are ripe for review.

## II.

## LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The substantive law governing a matter determines which facts are material to a case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The summary-judgment movant bears the burden of proving that no genuine issue of material fact exists. *Latimer v. Smithkline & French Lab'ys*, 919 F.2d 301, 303 (5th Cir. 1990). Usually, this requires the movant to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quotation marks omitted).

Once the summary-judgment movant has met this burden, the burden shifts to the non-movant to "go beyond the pleadings and designate specific facts" showing that a genuine issue exists. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (per curiam) (citing *Celotex*, 477

U.S. at 325). "This burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Id.* (citations omitted). Instead, the non-moving party must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis and quotation marks omitted).

"[C]ourts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary[-]judgment motion." *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alterations incorporated) (quotations marks omitted). But the Court need not "sift through the record in search of evidence to support a party's opposition to summary judgment." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citation and quotation marks omitted). If the non-movant is unable to make the required showing, the Court must grant summary judgment. *Little*, 37 F.3d at 1076.

## III.

## ANALYSIS

In their respective motion briefs, each party asks the Court to enter summary judgment on Kroger's liability. *See* Doc. 34, Pl.'s Br., 6; Doc. 38, Def.'s Br., 1. Thus, the Court must determine whether a genuine issue of material fact exists as to Kroger's negligence. *See Celotex*, 477 U.S. at 323.

In Texas, a plaintiff seeking to prove negligence must establish: "(1) a legal duty owed to the plaintiff by the defendant; (2) a breach of that duty; (3) an actual injury to the plaintiff; and (4) a showing that the breach was the proximate cause of the injury." *Gutierrez v. Excel Corp.*, 106 F.3d 683, 687 (5th Cir. 1997) (citation omitted).

A.    *Kroger's Motion for Summary Judgment Is Denied.*

Kroger argues that the Court should grant summary judgment in its favor because Gusman cannot prevail on any of her claims as a matter of law. Doc. 38, Def.'s Br., 1. The Court disagrees, finding that genuine issues of material fact exist as to whether Gusman may succeed on her claims. Accordingly, the Court **DENIES** Kroger's motion for summary judgment.

As a preliminary matter, Gusman asserts—and Kroger does not dispute—that Kroger is a nonsubscriber under the Texas Workers' Compensation Act (TWCA). "To encourage employers to obtain workers' compensation insurance, [the TWCA] penalizes nonsubscribers by precluding them from asserting certain common-law defenses in their employees' personal-injury actions[.]" *Kroger Co. v. Keng*, 23 S.W.3d 347, 349 (Tex. 2000). Thus, in an action against a nonsubscriber-employer "to recover damages for personal injuries or death sustained by an employee in the course and scope of the employment," the TWCA precludes a nonsubscriber from asserting that "(1) the employee was guilty of contributory negligence; (2) the employee assumed the risk of injury or death; or (3) the injury or death was caused by the negligence of a fellow employee." Tex. Lab. Code. § 406.033; *see also Odom v. Kroger Tex., L.P.*, 2014 WL 585329, at *3 (N.D. Tex. Feb. 14, 2014) ("Kroger is a non-subscribing employer . . . Kroger cannot rely on the defense of contributory negligence, assumption of risk, or the fellow-servant rule."). Accordingly, Kroger can only defend against Gusman's negligence claims by demonstrating that Gusman cannot establish one or more elements of her claims. *See Odom*, 2014 WL 585329, at *3. And indeed, that is what Kroger attempts to do.

First, Kroger argues that Gusman's claims fail because Gusman "cannot establish the threshold element of 'duty.'" Doc. 38, Def.'s Br., 1. Next, Kroger argues that Gusman "was the sole

proximate cause of her injur[y]," thus negating the element of causation. *Id.* The Court addresses both arguments below and finds that genuine issues of material fact exist as to whether Gusman may succeed on her claims.

### 1.   Existence of a duty

"The existence of a duty is a threshold question of law," and "[t]he nonexistence of duty ends the inquiry into whether negligence liability may be imposed." *Saucedo v. Horner*, 329 S.W.3d 825, 830 (Tex. App.—El Paso 2010, no pet.). Kroger argues that summary judgment is proper because it did not owe a duty to Gusman to warn or protect her from "the risk of trying to move a train of 50 or more shopping carts[.]" Doc. 38, Def.'s Br., 15. The Court disagrees.

"[A]s [Gusman]'s employer, [Kroger] had the nondelegable duty to use ordinary care in providing [Gusman] with a safe workplace." *Leitch v. Hornsby*, 935 S.W.2d 114, 118 (Tex. 1996) (citations omitted). This duty required Kroger to "warn [Gusman] of the hazards of employment and provide needed safety equipment or assistance." *Kroger Co. v. Elwood*, 197 S.W.3d 793, 794 (Tex. 2006) (per curiam) (citations omitted). However, "an employer is not an insurer of its employees' safety." *Id.* And under Texas law, Kroger thus "owe[d] no duty to warn of hazards that are commonly known or already appreciated by" Gusman. *Id.*

Kroger suggests that Gusman already appreciated the hazard that led to her injury because of the safety training she received from Kroger. Doc. 38, Def.'s Br., 5–8. However, genuine issues of material fact exist as to whether Gusman appreciated the dangers of assisting Van Buren in moving the large train of carts. Though Gusman asserts that she was not trained on moving carts, Doc. 34, Pl.'s Br., 19–20, Kroger shows that Gusman "admitted that she was trained in response to [Kroger's] Requests for Admissions[.]" Doc. 41, Def.'s Resp., 6. Even if Gusman was trained, however, the

- 6 -

Court cannot determine from the evidence whether the training was adequate or the policies were subsequently enforced such that Gusman appreciated the dangers of "mov[ing] a train of 50 or more shopping carts[.]" *See* Doc. 38, Def.'s Br., 15. Thus, a genuine issue of material fact exists as to whether Gusman appreciated the hazard at issue.

Next, Kroger argues that, regardless of Gusman's training, Kroger "ow[ed] no duty to [Gusman] to warn of the hazards" that led to her injury because "there can be no question that the risk of trying to move a train of 50 or more shopping carts is obvious and commonly known to any reasonable person." Doc. 38, Def.'s Br., 15, 19–20. In support, Kroger cites three opinions of the Texas Supreme Court in which the court found that certain hazards were commonly known. *See* Doc. 38, Def.'s Br. 13–14.

First, in *Brookshire Grocery Co. v. Goss*, a grocery store employee was injured when she hit her shin on a "lowboy" cart[5] after she had previously "successfully stepped over the cart[.]" 262 S.W.3d 793, 795 (Tex. 2008) (per curiam). There, the Texas Supreme Court found that the employer did not owe a duty to warn its employee of the dangers of tripping over the lowboy, as "[a] stationary, loaded lowboy is easily visible, and [the employee] saw it upon entering the" area where she fell. *Id.* Indeed, the danger of "stepping over a lowboy . . . is a danger apparent to anyone, including [the employee]." *Id.* And the employee in *Goss* clearly appreciated the danger, as she "had both previously encountered lowboys in the course of her work and was able to safely navigate around this lowboy[.]" *Id.*

_____

[5] According to the Texas Supreme Court, "a lowboy cart measures roughly two-and-a-half feet by five feet and its bed sits about ten inches off the ground. It has four wheels and a handle on one end and measures about forty-two inches from the ground up." *Goss*, 262 S.W.3d at 794 n.1.

Next, in *Kroger Co. v. Elwood*, the plaintiff-employee "was injured when a customer shut her vehicle door on his hand while he was transferring items from a grocery cart to the vehicle[.]" 197 S.W.3d at 794. In light of the employee's admission that "he knew it was dangerous to place his hand in a vehicle's doorjamb," and in the absence of "evidence that other courtesy clerks sustained similar injuries," the Texas Supreme Court concluded that defendant-employer did not owe a duty to the employee to warn about the dangers of placing one's hand in a doorjamb. *Id.* at 795.

Finally, in *Jack in the Box, Inc. v. Skiles*, a lift gate on a food delivery truck broke while items were still inside. 221 S.W.3d 566, 567 (Tex. 2007) (per curiam). Though the defendant-employer's policy required delivery persons to suspend deliveries until the lift gate could be fixed, the plaintiff-employee attempted to use a ladder to climb over the broken lift gate and was injured in the process. *Id.* There, the Texas Supreme Court did not impose a duty on the employer to warn against that action, as "[t]he dangers associated with the use of a ladder to climb over a lift gate are common and obvious to anyone." *Id.* at 569.

However, the facts of this case are different than those in the cases cited by Kroger, and the Court does not find that the risk of trying to move a train of 50 or more shopping carts is obvious or commonly known. In *Goss*, *Elwood*, and *Skiles*, the dangers faced by the employees were those dangers inherent in everyday life. *See id.* at 567; 262 S.W.3d at 794; 197 S.W.3d at 794. Indeed, nearly any person with the ability to walk has tripped over a low-sitting object. And nearly any person with hands and fingers has caught them in a door or hinge. Further, the dangers of ladders are commonly known, especially where used incorrectly. Here, however, the act of moving multiple grocery carts is not a task undertaken by most people. And the risk of having one's arm "crush[ed]" between grocery carts is not a commonly encountered risk, like the risk of tripping, getting one's

- 8 -

hand caught in a door, or injuring oneself by misusing a ladder. *See* Doc. 34, Pl.'s Br., 9.

Whether an employer has the duty to warn its employees "depends on a legal analysis balancing a number of factors, including the risk, foreseeability, and likelihood of injury, and the consequences of placing the burden on the defendant." *Gen. Elec. Co. v. Moritz*, 257 S.W.3d 211, 218 (Tex. 2008). And these factors do not weigh against finding a duty in this case. Indeed, Kroger does not argue that the dangers of moving multiple carts are commonly known. Rather, Kroger takes issue with the *number* of carts that Gusman and Van Buren moved. *See* Doc. 38, Def.'s Br., 19–20. Kroger claims that Gusman "knew she was not allowed to move more than eight carts at a time," pursuant to Kroger's 2015 policy. *Id.* at 5. But it is not common knowledge that moving more than eight carts is any more dangerous than moving eight or less. Indeed, while a "50-cart train" may be "near-impossible" to physically move, the risk of "wedg[ing]" one's arm "between two carts" is not any more foreseeable for the average person than it is during an attempt to move a five-cart train. *See id.* at 10, 19–20. Moreover, the fact that two employees—Gusman and Van Buren—were moving the carts, rather than one, seems to diminish the risks associated with the act. Accordingly, the Court does not find that Gusman's act of assisting Van Buren in moving the cart-train was a hazard that is commonly known.

Finally, Kroger's duty to Gusman "include[d] an obligation to provide adequate help under the circumstances for the performance of required work." *Werner v. Colwell*, 909 S.W.2d 866, 869 (Tex. 1995) (citing *W. Union Tel. Co. v. Coker*, 204 S.W.2d 977, 978 (1947)). Here, Gusman has alleged and provided evidence that the Store "was busy and understaffed" and that "[a]ll of Kroger's [cart] straps were either broken or missing" on the day that she was injured. Doc. 34, Pl.'s Br., 5–6. Though Kroger asserts that "the fact that a cart strap was not available on the day of the Incident

is wholly irrelevant," Doc. 38, Def.'s Br., 8, the Court finds that it *is* relevant to the determination of whether Kroger breached its "duty to furnish [Gusman] with safe and suitable equipment so that [s]he may carry on the work with reasonable safety." *See McMillian v. Hearne*, 584 S.W.3d 505, 512 (Tex. App.—Texarkana 2019, no pet.). Although "a cart strap could not have been used on a train of 50 shopping carts," Doc. 38, Def.'s Br., 8, this does not excuse Kroger from its duty, as it is entirely possible that Van Buren would not have attempted to move that many carts had Kroger furnished the safety straps.

Overall, Kroger owed the "duty to use ordinary care in providing [Gusman] with a safe workplace." *Leitch*, 935 S.W.2d at 118 (citations omitted). And a genuine issue of material fact exists as to whether Kroger breached that duty.

    2.    <u>Sole proximate cause</u>

Even if Kroger and Van Buren were negligent, Gusman must prove that their negligence proximately caused Gusman's injury. *See Gutierrez*, 106 F.3d at 687. Kroger asserts that summary judgment should be granted in its favor because Gusman cannot prove that Kroger or Van Buren proximately caused Gusman's injury. *See* Doc. 38, Def.'s Br., 20. Rather, Kroger states that Gusman's "dangerous decision and risky behavior directing and assisting [Van Buren] to move a 50-cart train of shopping carts was the sole proximate cause of [Gusman's] accident and injur[y]." *Id.* "[B]ut for [Gusman's] decision to assist Van Buren in violating Kroger policy," Kroger argues, "her injury would not have occurred." *Id.* at 21–22. The Court declines to agree at this stage and finds that the proximate cause of Gusman's injury is a question for the jury.

"In Texas, proximate cause has two factors: cause in fact and foreseeability." *Gutierrez*, 106 F.3d at 687 (citation omitted). "Cause in fact is 'but for cause,' meaning the negligent act or omission

was a substantial factor in bringing about the injury and without which no harm would have been incurred." *El Chico Corp. v. Poole*, 732 S.W.2d 306, 313 (Tex. 1987). "Foreseeability means that a person of ordinary intelligence should have anticipated the dangers that his negligence created." *Gutierrez*, 106 F.3d at 687 (citing *Poole*, 732 S.W.2d at 313). Proximate cause "must be established by probative evidence, not by mere conjecture or guess." *Id.* (citing *Doe v. Boys Clubs of Greater Dall., Inc.*, 907 S.W.2d 472, 477 (Tex.1995)). Thus, "[c]ausation is a question of fact for the jury, and the jury has broad latitude to infer proximate cause from the evidence and circumstances surrounding an event." *Id.* (citations omitted).

A jury could find that Kroger was negligent in failing to warn Gusman or furnish necessary equipment, and that Van Buren was negligent in attempting to move the carts. And a jury could find that Kroger or Van Buren's negligence was a but-for cause of Gusman's injury and that Gusman's injury was foreseeable. *See Poole*, 732 S.W.2d at 313. Thus, while a jury could find that Gusman's actions were the sole proximate cause of her injury, the jury could also find that her injury was proximately caused by Kroger's and/or Van Buren's negligence. And because the TWCA precludes Kroger from asserting a defense of contributory negligence, it is of no consequence that Gusman's own negligence may have contributed to her injury, so long as Kroger's or Van Buren's negligence was one of the contributing proximate causes.

In sum, genuine issues of material fact exist as to whether Kroger breached a duty to Gusman and whether any such breach was a proximate cause of Gusman's injury. Thus, the Court **DENIES** Kroger's motion for summary judgment (Doc. 37).

B.     *Gusman's Motion for Partial Summary Judgment Is Denied.*

Gusman seeks "summary judgment as to Kroger's liability in this case[,] . . . leaving only

Gusman's damages to be determined" by the jury. Doc. 34, Pl.'s Br., 5. Indeed, Gusman asserts that the evidence proves that Kroger is vicariously liable for the negligence of Van Buren, as well as directly liable for Kroger's own negligence. *Id.* at 12–20. The Court **DENIES** Gusman's motion for partial summary judgment, as genuine issues of material fact exist as to all of Gusman's claims.

     1.     <u>Vicarious liability</u>

Gusman seeks to hold Kroger vicariously liable for the acts of its employee, Van Buren. Doc. 1-2, Notice of Removal Exs., 12. "Under the doctrine of *respondeat superior*, an employer is vicariously liable for the torts of its employee only when the employee is acting within the course and scope of employment." *Doe v. Apostolic Assembly of Faith in Christ Jesus*, 452 F.Supp.3d 503, 517 (W.D. Tex. 2020) (citing *Minyard Food Stores, Inc. v. Goodman*, 80 S.W.3d 573, 576 (Tex. 2002)). Gusman claims that in "attempt[ing] to move 50 carts at once," Van Buren acted negligently, and that his "negligence was a proximate cause of Gusman's injury." Doc. 34, Pl.'s Br., 13, 15. Indeed, Gusman points out that Van Buren failed to abide by Kroger's training and policies, which "prohibited its courtesy clerks from moving more than six to eight carts at any one time, and expressly required that they use a cart strap anytime they were moving more than two." *Id.* at 13–14.

The parties do not dispute that Van Buren acted within the scope of his employment with Kroger when Gusman was injured. *Id.* at 12; *see generally* Doc. 38, Def.'s Br.; Doc. 41, Def.'s Resp.; Doc. 50, Def.'s Reply. And they agree that Van Buren pushed the large cart-train and injured Gusman. Doc., 34, Pl.'s Br., 8–9; Doc. 38, Def.'s Br., 9–10. What is in dispute, however, is whether Van Buren's acts constituted negligence. "[G]enerally, questions of negligence . . . are quintessential jury questions." *UDR Tex. Props., L.P. v. Petrie*, 517 S.W.3d 98, 105 (Tex. 2017) (Willett, J., concurring). This case is no exception.

To prove negligence, "a plaintiff must show that a defendant either did something an ordinarily prudent person exercising ordinary care would not have done under the circumstances, or that the defendant failed to do that which an ordinarily prudent person would have done in the exercise of ordinary care." *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 541 (5th Cir. 2005) (citing *Caldwell v. Curioni*, 125 S.W.3d 784, 793 (Tex. App.—Dallas 2004, pet. denied)). However, "[t]he Texas Supreme Court has refused to create a standard of care or duty based upon internal policies, and the failure to follow such policies does not give rise to a cause of action[.]" *Owens v. Comerica Bank*, 229 S.W.3d 544, 547 (Tex. App.—Dallas 2007, no pet.) (citing *FFE Transp. Servs., Inc. v. Fulgham*, 154 S.W.3d 84, 92 (Tex. 2006); *Guerra v. Regions Bank*, 188 S.W.3d 744, 747 (Tex. 2006)). While Kroger's policies "may be evidence of the standard of care," they are not determinative of fault or the applicable standard of care in this negligence case. *See Mills v. Angel*, 995 S.W.2d 262, 268 (Tex. App.—Texarkana 1999, no pet.). Thus, while Gusman's evidence shows that Van Buren failed to abide by Kroger's policies, such a failure does not necessarily mean that Van Buren "failed to do that which an ordinarily prudent person would have done in the exercise of ordinary care." *See id.* In other words, failure to abide by Kroger's policy does not, as a matter of course, equate to negligence. The jury must decide whether Van Buren acted negligently in violating Kroger's policies.

Because a genuine issue of material fact exists as to whether Van Buren's actions constituted negligence, Gusman's request for summary judgment on her vicarious liability claim is **DENIED.**

2.   Direct liability claims

Gusman seeks summary judgment on her negligence claims against Kroger for two alleged failures on Kroger's behalf. Doc. 34, Pl.'s Br., 16, 19. First, Gusman claims that Kroger was negligent by "fail[ing] to provide its employees with safe and suitable equipment with which to perform their

jobs." *Id.* at 16. Second, Gusman claims that "Kroger failed to provide its employees safe conditions in which to work" by "fail[ing] to adequately staff or train its employees." *Id.* at 19. However, genuine issues of material fact exist as to Kroger's direct liability.

First, a genuine issue of material fact exists as to whether Kroger's "failure to provide . . . safe and suitable equipment" caused Gusman's injury. *Id.* at 16. Though the parties do not dispute that the Store lacked working cart straps, *id.* at 5; *see* Doc. 38, Def.'s Br., 8, "a cart strap could not have been used on a train of 50 shopping carts." Doc. 38, Def.'s Br., 8.

Further, a genuine issue of material fact exists as to whether Kroger was negligent in failing to provide safe working conditions. Despite Gusman's arguments to the contrary, *see* Doc. 34, Pl.'s Br., 19, Gusman previously "admitted that she was trained" to retrieve shopping carts. Doc. 41, Def.'s Resp., 6. And though Gusman asserts that Kroger "failed to adequately staff" the Store on the day of her injury, she has not shown that the alleged failure to staff caused her injury. *See* Doc. 34, Pl.'s Br., 19. Indeed, the parties dispute whether cart retrieval was part of Gusman's duties. *See* Doc. 34, Pl.'s Br., 7; Doc. 38, Def.'s Br., 4. Thus, Gusman may have performed those duties regardless of additional employees and may have suffered the same injury. Therefore, genuine issues of material fact exist as to both of Gusman's theories of Kroger's direct liability.

Gusman has not met her burden for summary judgment on her claims against Kroger for vicarious or direct liability. Accordingly, the Court **DENIES** Gusman's motion.

C.   *Gusman's Objections to Evidence Are Moot.*

Gusman objects to several pieces of Kroger's summary-judgment evidence, specifically "documents Kroger relies on to claim that Gusman was trained regarding the handling of carts." Doc. 43, Pl.'s Resp., 8–9. However, in light of Gusman's response to Kroger's Requests for Admissions, *see*

Doc. 41, Def.'s Resp., 6, and Gusman's failure to provide compelling evidence that she was not trained, the Court did not need to rely on the documents in reaching its conclusion that Gusman has not proved a failure to train. *See supra* Section III.B.2. Thus, the Court does not rely on the objected-to evidence in this Order and Gusman's objections are **MOOT**.

## IV.

## CONCLUSION

For the reasons stated above, the Court **DENIES** Kroger's Motion for Summary Judgment (Doc. 37) and **DENIES** Gusman's Motion for Partial Summary Judgment (Doc. 33). Further, Gusman's objections, as set forth in her response (Doc. 43) to Kroger's motion are **MOOT**.


SO ORDERED.

SIGNED: August 2, 2021.


JANE J. BOYLE
UNITED STATES DISTRICT JUDGE

- 15 -